UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
IN RE: METHYL TERTIARY BUTYL :
ETHER ("MTBE") PRODUCTS :
LIABILITY LITIGATION :
  :
  : Master File No. 1:00–1898
This document relates to: : MDL 1358 (SAS)
  : M21-88
*New Jersey Department of Environmental* :
*Protection et al. v. Atlantic Richfield Co.,* :
*et al. (08-cv-00312)* :
  :
----------------------------------X

**KENNETH E. WARNER, SPECIAL MASTER:**

### PRE-TRIAL ORDER #60
### (Defendants' Motions To Compel Production Of Certain Site Files By Plaintiffs, And For An Order Permitting Off-Site Scanning Thereof)

Defendants initially moved to compel production of 255 site files by plaintiffs, as part of defendants' effort to evaluate potential sites for the selection of focus sites at the beginning of August and September. Plaintiffs opposed that application, claiming that the number of site files sought was excessive and that it would be extremely difficult, if not impossible, to locate and assemble all of them within the time requested by defendants. I ruled on the record on June 10, 2010 after a hearing that plaintiffs should use their "best efforts" to assemble the requested files as soon as possible. Plaintiffs followed my direction with diligence and in fact located all of the requested site files. At this point they have retrieved many of them and will soon have all of them retrieved.

Each site file consists of varying numbers of boxes. The total number of boxes in the 255 requested site files has not yet been determined by plaintiffs, but apparently 168 site files on an index prepared by plaintiffs consist of 422 boxes, an average of 2.5 boxes per site file.[1] Extrapolating this average to the entire universe of 255 site files would indicate approximately 637 boxes; allowing for some margin of statistical variation, as a working hypothesis I assume that the total number of boxes will be between 600 and 700, an average of 650, pending tabulation of the precise number by plaintiffs.

Upon production of the site files on a rolling basis at the offices of NJDEP, defendants initiated the process of scanning on four scanners brought by them into a room provided by plaintiffs, which is available for scanning during regular business hours each working day.[2] After initial logistical and set-up problems, which made the process less efficient than it could have been, the scanning got underway more smoothly, but very slowly. According to defendants, each scanner in operation on NJDEP premises scans from 1 to 2 boxes per one-shift day, an average of 1.5 boxes per scanner or six boxes per day for the four scanners. At this rate, it will take more than 100 working days for the scanning to be completed.

Thus defendants now move for an order permitting them to take the site file boxes

---

[1] One of the site files located apparently consists of approximately 1000 boxes, but plaintiffs say that is an "outlier," not representative of the other site files, and defendants have said they are not interested in obtaining those 1000 boxes. Therefore, although this pre-trial order continues to refer to 255 site files, the actual number involved is 254.

[2] To the extent defendants are copying and not scanning, my reference to scanning is intended to refer to both processes.

2

off premises to an outside scanning facility, where the scanning would be done using 15 scanners working simultaneously on a 24/7 basis.[3]

Plaintiffs oppose this request, arguing that the number of site files being scanned is excessive and that the only reason for urgency is defendants' delay in requesting the files, for which plaintiffs should not be made to suffer. However, I already ruled on these arguments when I permitted defendants to scan, at their expense, as many of the 255 site files as plaintiffs' best efforts were able to gather (as noted, that turned out to be all the files). Plaintiffs also argue, very fervently, that NJDEP files are important government records which should be kept on premises at the DEP to prevent any of those files from being lost. This argument raises a valid consideration, which I have taken into account in my ruling.

In order to avoid off-site scanning, plaintiffs have offered to provide another room at the NJDEP offices that they say will hold somewhere between 6 to 10 more scanners. That room too would be available during business hours on every working day, and plaintiffs further offer to extend those business hours somewhat. Defendants argue that is still insufficient (*i.e.*, assuming 8 more scanners and therefore 12 more boxes per day from the additional room and scanners, that is still only a total of 18 boxes per one-shift day).[4]

---

[3] The company that would be used by defendants for this off-site scanning project is the same one that is supplying the scanners and personnel for the on-site scanning now taking place. Plaintiffs have raised no objection to this company's ability to conduct the scanning in a competent and reasonable way (since many pages in a site file are stapled together or otherwise bound the process also involves unstapling and then restapling, handwork that must be done with care and can be slow).

[4] Plaintiffs indicate that perhaps they will be able to make yet a third room available, or
(continued...)

3

Based upon all of the foregoing, the written submissions of the parties and the arguments of counsel during the two teleconference hearings on this matter, the following is apparent: (a) at the current rate, even enhanced by an additional room, it will probably take more than seven weeks for the scanning project to be completed; (b) for my ruling permitting defendants to inspect and scan the site files to have meaningful utility, the scanning process needs to be very substantially expedited; (c) 15 off-site scanners will scan approximately 22 boxes per shift (possibly more at an off-site facility organized for this type of operation); three shifts per day will raise that number to approximately 66 boxes; and adding the scanning that will continue to be done on premises at the NJDEP, enhanced by the additional room promised, that number will be approximately 84 boxes per day – making it possible to complete the job in seven or eight days, as opposed to more than seven weeks; and (d) for off-site copying to be workable, the safety and security of NJDEP files must be fully protected and insured. I therefore rule as follows:

1. Beginning Monday, June 28, a two prong scanning operation will be put in place – with scanning taking place both at the NJDEP offices and at the off-site location referenced by defendants.

2. Each day priority will be given to the NJDEP location, so that site files will first be made available for scanning there (*i.e.,* based on a reasonable estimate of the

---

[4](...continued)
maybe more (Mr. Kaufmann, plaintiffs' counsel, said he would try for the most possible, but he didn't know what number of rooms that would be).

4

number of boxes that can be scanned that day). That same day additional boxes – the quantity to be determined by a reasonable estimate of the number of boxes that can be scanned off-site during the next 24 hours – will be sent to the off-site location, where it will be scanned and returned to NJDEP by the next day, so the records will be off-premises for no more than approximately 24 hours. Defendants will supply all necessary transportation at their expense.

     3.    In making files available for scanning at the off-site location, the parties should send over a sufficient number of boxes to minimize the chance that the off-site facility will find itself with downtime (*i.e.*, scanning completed of all files delivered with significant time to spare). This will be a trial and error process, but the parties should start by estimating liberally (*e.g.*, two (instead of 1.5) boxes per scanner per shift).[5]

     4.    If the NJDEP makes additional scanning space available, defendants will promptly supply as many scanners as is feasible to function in said space and use that space, as well as the existing on-site space, for scanning site files.

     5.    Plaintiffs now have a security monitor at the on-site location where four machines are in operation to insure that no NJDEP files are removed or destroyed. They are entitled to the same level of security off-site and may hire reasonable security personnel for that purpose, at defendants' expense (very likely, with more machines in operation off-site, some additional security personnel will be needed beyond the single

---

[5] There is no need to worry about downtime for the on-site scanning location because all of the remaining files will still be available there if needed.

5

monitor now being used, a determination I leave to the reasonable exercise of discretion by plaintiffs). Plaintiffs may use private security personnel hired for this purpose or government security personnel already in the employ of plaintiffs. Either way it will be at defendants' expense. In addition, if plaintiffs employ security personnel to monitor the loading, unloading and transport of the files, in addition to monitoring the scanning process, that will also be part of the expense defendants will cover.

      6.    No scanning or production of site files need take place by plaintiffs over the July 4th Weekend. This means that the Friday, July 2 shipment of boxes will be scanned during the three shifts ending Saturday, July 3 (to be returned Tuesday, July 6, unless NJDEP makes itself available for the return on July 3). If the pace of scanning goes as I anticipate, then it will not be necessary for scanning to take place on *any* weekend (with the Friday shipment of boxes on July 9, for example, being handled in the same way as aforementioned for July 2).

Proceeding as outlined above fairly balances the right of plaintiffs to protection of their files and the right of defendants to scan the site files made available pursuant to my order. It will also have the added benefit of bringing this process to an end relatively quickly, allowing the NJDEP to return to "business as usual" and its facilities to be fully available again for their intended governmental purpose.

In the course of effectuating this order, the parties may encounter issues – logistical or otherwise – not explicitly covered herein but arising from the procedures I have

outlined. If the parties cannot resolve these issues on their own, they should contact me so that any necessary further rulings can be made by me without the process being unduly delayed.

This constitutes my decision and order.

Dated: June 25, 2010

**SO ORDERED:**

_____
Kenneth E. Warner, Special Master