```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/30/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
In Re: Methyl Tertiary Butyl Ether ("MTBE")   :   Master File No. 1:00-1898
Products Liability Litigation                              :   MDL 1358
                                                            :
This document relates to:                             :
                                                            :   **OPINION & ORDER**
*New Jersey Department of Environmental*   :
*Protection, et al. v. Atlantic Richfield Co., et*   :
*al.,* 08-cv-312 (VSB)                                :
                                                            :
------------------------------------------------------------X

Appearances:

Michael D. Axline
Miller & Axline, P.C.
Sacramento, CA
*Special Counsel for New Jersey Plaintiffs*

Gwen Farley
Gurbir S. Grewal
Attorney General of New Jersey
Trenton, NJ
*Counsel for New Jersey Plaintiffs*

James A. Pardo
Lisa A. Gerson
McDermott Will & Emery LLP
New York, NY
*Counsel for Defendants Exxon Mobil Corporation, ExxonMobil Oil Corporation, Cumberland Farms, Inc., Gulf Oil Limited Partnership, Getty Properties Corp., Getty Petroleum Marketing Inc., Lukoil Americas Corp., Lukoil North America LLC, Lukoil Pan Americas, Total Petrochemicals & Refining USA, Inc.*

VERNON S. BRODERICK, United States District Judge:

  Before me is Plaintiffs' motion to issue a suggestion of remand to the Judicial Panel on Multidistrict Litigation (the "Panel") recommending that this action be remanded for all purposes to the United States District Court for the District of New Jersey (the "Transferor Court"). (Doc. 563.) Because Plaintiffs have failed to demonstrate good cause to warrant remand, their motion is DENIED.

## I.     Factual Background and Procedural History[1]

This consolidated multidistrict litigation ("MDL") relates to the alleged contamination of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the breakdown of MTBE in water. *See In re MTBE Prods. Liab. Litig.*, MDL No. 1358 (SAS), 2015 WL 7758530, at *1 (S.D.N.Y. Dec. 1, 2015).  In this case (the "New Jersey case"), New Jersey[2] alleges that Defendants'[3] manufacture or use of MTBE has contaminated, or threatens to contaminate, groundwater within its jurisdiction.  Familiarity with the underlying facts is presumed for the purposes of this Opinion & Order.[4]

This action was transferred into the MDL on January 14, 2008.  Judge Scheindlin, who presided over this case until it was reassigned to me on May 16, 2016, managed consolidated discovery through a series of conferences and Case Management Orders ("CMOs").  On March 11, 2010, she entered Case Management Order No. 60, directing the parties in the New Jersey action to select a total of forty (40) sites for full discovery and, at the culmination of full

---

[1] The following factual summary is presented for background purposes only; I make no findings of fact and reach no conclusions of law in Part I of my decision.

[2] Plaintiffs refer to themselves as the "New Jersey Plaintiffs" or as "New Jersey." (*See, e.g.*, Doc. 563.)  According to the electronic docket, the individual Plaintiffs are the New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund.  I refer them hereinafter as "New Jersey" or "Plaintiffs."

[3] Many of these Defendants have settled over the course of the litigation.  The remaining Defendants are the Exxon Defendants (ExxonMobil Corporation and ExxonMobil Oil Corporation), the Gulf Defendants (Gulf Acquisition LLC, Gulf Oil Limited Partnership, and Cumberland Farms Inc.), Getty Properties Corporation, and the Lukoil Group (Lukoil Americas Corporation, Lukoil North America LLC, Lukoil Pan Americas, LLC, PJSC Lukoil, and Getty Petroleum Marketing Inc.).  (*See* ECF Docket; Pls.' Mem. 4 n.1; Doc. 581.)  "Pls.' Mem." refers to Plaintiff's Motion for Remand, filed on January 2, 2019.  (Doc. 563.)  All remaining Defendants join in opposing Plaintiff's motion, except for Gulf Acquisition LLC, which has not answered or appeared.  In addition, on July 28, 2019, Plaintiffs and the Lukoil Defendants informed me that they had reached a tentative settlement in principle, but as of the date of this Opinion & Order they do not appear to have finalized that settlement.  (Doc. 580.)

[4] A thorough recitation of the background facts related to this MDL is provided in United States District Court Judge Shira A. Scheindlin's decision *In re MTBE Products Liability Litigation*, 379 F. Supp. 2d 348, 364–67 (S.D.N.Y. 2005).

discovery, to narrow this number to twenty (20) trial sites. (CMO 60.)[5] The parties eventually settled on nineteen (19) trial sites, six (6) of which relate to at least one remaining Defendant. (*See* CMO 107.)[6] In December 2014, New Jersey apparently filed a letter seeking full remand of the action, which is not on ECF but is referenced in the letter Defendants filed in response on December 24, 2014. (*See* Doc. 421.) In that letter, Defendants agreed that fact and expert discovery had been completed as to the trial sites and consented to partial remand, but opposed full remand as to the remaining 5,000-plus sites. (*Id.*) On February 24, 2015, Judge Scheindlin issued a Suggestion to Remand all claims relating to the trial sites to the Judicial Panel on Multidistrict Litigation ("JPML"), finding that "discovery on the Trial Sites has been substantially completed and that the coordinated and consolidated pretrial proceedings have run their course with respect to claims related to the Trial sites." (2015 Sug. Remand 2.)[7] The Order specifically stated that the Court would "retain jurisdiction over the remainder of the Action in order to conduct coordinated and consolidated pretrial proceedings." (*Id.*) On April 29, 2016, Judge Scheindlin ordered that all claims remaining following the Phase I trials were to be resolved in a single "Phase II" trial, "so long as such a trial protects the constitutional rights of all the parties." (CMO 124.)[8] She also issued an order directing the parties to exchange initial "Phase II discovery," to provide an updated master list of sites, and to meet and confer about a proposed approach to the remainder of Phase II discovery and trial. (CMO 123.)[9] Although the parties were to submit joint proposed Case Management Orders as soon as practicable after the

---

[5] "CMO 60" refers to Case Management Order No. 60, filed on March 11, 2010. (Doc. 81.)

[6] "CMO 107" refers to Case Management Order No. 107, filed on December 27, 2012. (Doc. 256.)

[7] "2015 Sug. Remand" refers to the Suggestion to Remand issued by Judge Scheindlin on February 24, 2015. (Doc. 422.)

[8] "CMO 124" refers to Case Management Order No. 124, filed on April 29, 2016. (Doc. 517.)

[9] "CMO 123" refers to Case Management Order No. 123, filed on April 29, 2016. (Doc. 518.)

deadline for the master list of sites, which was October 14, 2016, (*id.*), to date the parties have not done so.

On November 13, 2017, I issued a Suggestion of Remand as to the Phase I claims in the Orange County Water District case within this MDL (the "OCWD Case") (No. 04 Civ. 4968, at Doc. 495), at the plaintiff's request, along with a Memorandum and Opinion granting the plaintiff's motion, *In re MTBE Prods. Liab. Litig.*, No. 04 CIV. 4968 (VSB), 2017 WL 5468758 (S.D.N.Y. Nov. 13, 2017) ("OCWD Remand Opinion"). I found that the consolidated pretrial proceedings had run their course as to the focus plume sites relating to Arco/BP and Shell and should be remanded, *id.* at *4–5, especially given that all the other focus plume sites, which related to other defendants, had previously been remanded, *id.* at *1 n.5. In my Suggestion of Remand, I specifically retained jurisdiction over the remainder of the action, i.e. the non-focus plume sites. (04 Civ. 4968, at Doc. 495.) On January 7, 2019, I denied the motion to remand filed by the plaintiff in the Pennsylvania case within this MDL (the "Pennsylvania Case"), in which "common, non-site discovery is underway . . . and is not scheduled to be completed until next year." *In re MTBE Prods. Liab. Litig.*, No. 14 Civ. 6228 (VSB), 2019 WL 117302, at *3–4 (S.D.N.Y. Jan. 7, 2019) ("Pennsylvania Remand Opinion" or "Penn. Remand Op.").

## II.     Legal Standard

The ultimate authority for remanding an action transferred for multidistrict litigation lies with the Panel itself. *See* 28 U.S.C. § 1407(a). The remand process is typically initiated when a transferee court recommends remand of an action to the transferor court by filing a suggestion of remand with the Panel. R.P.J.P.M.L. 10.1(b). Although the Panel is generally "reluctant to order a remand absent the suggestion of the transferee judge," *id.* at 10.3(a), the Panel may also remand an action upon its own initiative or motion of any party, *id.* at 10.1(b). "In considering

the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings." *In re Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d 1175, 1177 (J.P.M.L. 2000) (quoting *In re Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)); *see also In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003) ("A transferee judge's suggestion of remand to the Panel is an obvious indication that he has concluded that the game no longer is worth the candle (and, therefore, that he perceives his role under section 1407 to have ended)."). "In determining whether to issue a suggestion of remand to the Panel, the Court is guided by the standards for remand employed by the Panel." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, No. 08 Civ. 5440(RJH), 2011 WL 1046162, at *3–4 (S.D.N.Y. Mar. 22, 2011) (internal quotation marks omitted).

If "pretrial proceedings have run their course," the Panel is obligated to remand any pending cases to their originating courts, an obligation that is "impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34–35 (1997); *see also* 28 U.S.C. § 1407(a) (any action "transferred [to a multidistrict litigation] shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred"). When "everything that remains to be done is case-specific," it does not necessarily mean that "consolidated proceedings have concluded"; nevertheless, "the Panel has the discretion to remand a case" at that point. *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000); *see also In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, No. 3:05-MD-527 RM, 2010 WL 415285, at *2 (N.D. Ind. Jan. 22, 2010) ("The plain language of section 1407 accords the Panel discretion to remand cases before the conclusion of pretrial proceedings, and courts

routinely have read the statute in that flexible fashion." (quoting *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d at 1375)).  This is because "[i]t is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel, but rather that the transferee judge . . . will conduct the common pretrial proceedings . . . and any additional pretrial proceedings as he deems otherwise appropriate."  *In re Evergreen Valley Project Litig.*, 435 F. Supp. 923, 924 (J.P.M.L. 1977).

"The Court's discretion to suggest remand generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL."  *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030(LAP), 2010 WL 2541227, at *2 (S.D.N.Y. June 11, 2010) (internal quotation marks omitted).  "The transferee court should consider when remand will best serve the expeditious disposition of the litigation."  Manual for Complex Litigation (Fourth) § 20.133 (2017).  "Because the purpose of multidistrict litigation is for the convenience of the parties and witnesses and to promote the just and efficient conduct of the cases, the decision of whether to suggest remand should be guided in large part by whether one option is more likely to insure the maximum efficiency for all parties and the judiciary."  *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2011 WL 1046162, at *3–4 (internal quotation marks omitted).

Once a matter is transferred and consolidated or coordinated by order of the Panel, an action can be remanded to its court of origin prior to the completion of pretrial proceedings "only upon a showing of good cause."  *In re Integrated Res., Inc. Real Estate Ltd. P'ship Sec. Litig.*, 851 F. Supp. 556, 562 (S.D.N.Y. 1994) (quoting *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 462 F. Supp. 388, 390 (J.P.M.L. 1978)).  The party seeking remand bears the burden of

establishing that remand is warranted.  *Id.*

### III.    Discussion

New Jersey, relying heavily on my suggestion of remand in the OCWD case, requests that I issue a suggestion of remand, arguing that having the "trial judge manage the remaining New Jersey-specific discovery as well as trial," (Pls.' Mem. 1),[10] will "best serve the expeditious disposition of the litigation," (*id.* 6 (quoting OCWD Remand Opinion, at *2)).  Defendants, relying on my denial of remand in the Pennsylvania case, oppose on the basis that this case is not trial-ready and that the New Jersey case will benefit from further coordinated proceedings in the MDL.  (Defs.' Mem. 1.)[11]  In Defendants' view, "the whole point of the focus site approach is to work up a discrete set of sites for trial, conduct that trial, and then allow the parties and the MDL Court to take the 'lessons learned' and apply them to the next phase(s) of the case."  (*Id.*)  While the Pennsylvania case is at a much earlier stage of the proceedings and so not entirely analogous to this case, ultimately I agree with Defendants that the New Jersey case should remain in the MDL at this time.

Judge Scheindlin remanded only the Phase I claims for trial and explicitly retained the remainder of the New Jersey case for "coordinated and consolidated pretrial proceedings." (2015 Sug. Remand 2.)  Those "coordinated and consolidated pretrial proceedings" are not yet complete, and the remainder of the claims are still not trial-ready.  Despite this, many of Plaintiffs' arguments amount to restatements of facts about this litigation that were true at the time Judge Scheindlin issued her partial Suggestion of Remand in response to Plaintiffs' request for full remand.  For example, Plaintiffs argue that principal common discovery was completed

---

[10] "Pls.' Mem." refers to New Jersey Plaintiffs' Motion to Remand, filed on January 2, 2019.  (Doc. 563.)

[11] "Defs.' Mem." refers to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand, filed on January 16, 2019.  (Doc. 567.)

in 2010, an argument that is unpersuasive given that Judge Scheindlin continued to manage consolidated coordinated discovery for many years after that.  Plaintiffs also contend that the trial-site selection and discovery phases were completed many years ago, (Pls.' Reply 6.),[12] which is true, but which was also true in 2015 when Judge Scheindlin remanded the claims related to the focus sites.  Plaintiffs also point to the fact that this Court has issued an "order regarding final trial structure that provides all the guidance necessary for the transferor court to conduct the remainder of the proceedings." (Pls.' Reply 2.)  This, again, does not demonstrate any change in circumstance.  Judge Scheindlin issued that Order well over a year after remanding the focus site claims, in explicit contemplation of continued supervision over Phase II discovery within the MDL.  (*See* CMO 123; CMO 124.)  Indeed, the posture of this case is similar to the OCWD case when I issued a suggestion of partial remand:  some claims were trial-ready, and so they were remanded; some claims were not trial-ready, and so they were retained.  *See OCWD Remand Opinion*, 2017 WL 5468758, at *3.  Despite Plaintiff's argument that "Defendants provide no reason . . . why the residual case should not be remanded to the originating court now," (Pls.' Reply 7), Plaintiffs bear the burden on this motion, not Defendants, and they have not demonstrated any "good cause" for disturbing the purposeful structure of this litigation at this time, s*ee, e.g*., *In re Maxim Integrated Prods., Inc*., Misc. No. 12-244, 2015 WL 1757779, at *3 (W.D. Pa. Apr. 17, 2015), or any basis to treat this case differently from the OCWD case.

Plaintiffs proffer several additional arguments in support of remand, many of which I addressed and rejected in my Memorandum & Opinion denying Pennsylvania's motion for remand, *see generally Penn. Remand Op.*, 2019 WL 117302—briefed by the same Special

---

[12] "Pls.' Reply" refers to Plaintiffs' Reply in Support of Motion to Remand, filed on January 28, 2019.  (Doc. 573.)

Counsel who appears here—and all of which are unavailing.

First, Plaintiffs contend that remand is appropriate because the Panel has begun winding down the MDL by declining to transfer new cases into it. (Pls.' Mem. 1.) As in the Pennsylvania case, I find this argument meritless. *See Pennsylvania Remand Opinion*, 2019 WL 117302, at *4. Even where "virtually all the actions with which [a] case was consolidated have . . . been settled," remand is not required. *In re Integrated Res. Inc.*, 1995 WL 234975, at *4; *cf. In re Wilson*, 451 F.3d 161, 170 (3d Cir. 2006) ("[T]he test is not whether proceedings on issues common to all cases have concluded; it is whether the issues overlap, either with MDL cases that have already concluded or those currently pending."). "The mere fact that pretrial proceedings have been concluded in some or most of the transferred cases does not justify remand of other cases initially transferred by the Panel. Even if the transferee court had disposed of all but one transferred case, the Panel may refuse to remand that single case to the transferor district because discovery still remained to be completed in that case." *Wang v. Bear Stearns Cos.*, No. 11 Civ. 5643, 2013 WL 3479507, at *3 (S.D.N.Y. July 10, 2013) (quoting David F. Herr, Multidistrict Litigation Manual § 10:7 (2012 ed.)).

Second, Plaintiffs argue that the New Jersey trial court, presided over by the Honorable Freda Wolfson, is better equipped to handle the remaining discovery because it is New Jersey-specific and relates only to the non-focus sites. (Pls.' Mem. 1; Pls.' Reply 1.) Plaintiffs also argue that in supervising the Phase I proceedings, Judge Wolfson has accrued significant experience and is in the best position to guide the remainder of the case, particularly since she will be managing the trial and applying New Jersey law. (Pls.' Reply 1–2, 4.) That trial, Plaintiffs contend, will rely only on New Jersey law, and will share no common factual discovery and no common legal issues with any of the other cases in the MDL. (Pls.' Mem. 6.)

Plaintiffs have provided no factual or legal basis to support their contention that the New Jersey court will be better able to apply New Jersey law.  The opinions previously issued by this Court have applied the laws of many different states, often in the same opinion, as is often necessitated by the very the nature of an MDL.  *See In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005); *see also, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324 (S.D. Fla. 2016).

While Judge Wolfson undoubtedly has developed expertise in the facts of the New Jersey case, this Court has also accrued significant familiarity with the relevant complex factual and legal issues involved in the MDL.  As I observed in the Pennsylvania Remand Opinion, the MDL Court has issued more than 140 opinions on a wide range of topics, and "[i]n the course of approving numerous settlements and ruling on multiple dispositive motions, I—and Judge Scheindlin before she retired—have analyzed the different claims and issues involved in the various individual matters in this MDL."  2019 WL 117302, at *3.

Although the pace of litigation in the MDL may have slowed since the early years, preserving the consolidated structure of discovery will continue to provide gains in efficiency.  Because multiple cases have been remanded for Phase I trials, the results of those trials may inform settlement and/or Phase II discovery, as Judge Scheindlin envisioned.  Similarly, Defendants refer to a different discovery approach being pursued in the Pennsylvania case, which they believe might be fruitful in other multi-site cases. (Defs.' Mem. 7.)  Any such lessons would be best applied in a consistent fashion across cases by the MDL court, rather than on an *ad hoc* basis by the transferor courts.  The Pennsylvania and New Jersey cases concern neighboring states and share several Defendants; discovery in one may yield insights or data relevant to the other.  Uncoordinated discovery, by contrast, may result in inefficient duplication

of work, one of the key consequences the MDL structure aims to avoid.  *See In re A. H. Robins Co. "Dalkon Shield" IUD Prods. Liab. Litig.*, 419 F. Supp. 710, 712 (J.P.M.L. 1976).

In addition, Defendants point out, there may remain a handful of common legal issues, including whether the sovereign plaintiffs have *parens patriae* standing to recover damages to alleged injury to privately owned drinking wells.  (Defs.' Mem. 7.)  Plaintiffs argue that they have not yet presented expert testimony on these issues, (Pls.' Mem. 6), an argument that appears to be irrelevant given that Defendants have characterized this as an issue that may be raised in the future.  Plaintiffs also argue that in any event, if they did pursue such a cause of action, its viability would turn on New Jersey state law.  (*Id.*)  While the parties have not provided me with sufficient briefing on the instant motion to determine what law would govern these claims, if in fact Plaintiffs assert them, I note that *parens patriae* is a federal standing doctrine, *see, e.g.*, *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600 (1982), which would apply equally to all the sovereign cases.

Accordingly, I find that retention of the instant action by this Court will serve the interests of "conserv[ing] the resources of the parties, their counsel and the judiciary" by preventing duplicative discovery and judicial effort, and avoiding inconsistent rulings.  *In re Merrill Lynch*, 2010 WL 2541227, at *2 (citation omitted).  Plaintiffs have not shown that this case will no longer benefit from coordinated proceedings and have failed to meet their burden to demonstrate good cause why this case should be remanded to the United States District Court for the District of New Jersey.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs' motion is DENIED and I decline to suggest that the Panel remand this action at this time.  The parties are directed to submit a joint letter updating the court on the status of Phase II discovery by November 1, 2019.

The Clerk of Court is respectfully directed to terminate the pending motion at Document 563.

SO ORDERED.

Dated: September 30, 2019
      New York, New York

Vernon S. Broderick
United States District Judge